UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**INSYS THERAPEUTICS, INC.,** *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11292 (KG)<br><br>Joint Administration Requested |
| INSYS THERAPEUTICS, INC., *et al.*<br><br>**Plaintiffs,**<br><br>– against –<br><br>STATE OF ARIZONA, *ex. rel.* Mark Brnovich, Attorney General; STATE OF FLORIDA, Office of the Attorney General, Department of Legal Affairs; COMMONWEALTH OF KENTUCKY, *ex rel.* Andy Beshear, Attorney General; STATE OF MARYLAND; STATE OF MINNESOTA, by its Attorney General Lori Swanson, and Minnesota Board of Pharmacy; Gurbir Singh Grewal, Attorney General of New Jersey, on behalf of the STATE OF NEW JERSEY; and Sharon M. Joyce, acting director of the New Jersey State of Consumer Affairs State of New Jersey; STATE OF NEW MEXICO, *ex. rel.*, Hector Balderas, Attorney General; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF RHODE ISLAND; CITY OF PRESCOTT; STATE OF ARKANSAS, *ex rel.* Scott Ellington *et al.*; CITY OF SANTA ANA, and the People of the State of California, by and through Santa Ana Attorney Sonia R. Carvalho; CITY OF NEW HAVEN; CITIES OF ANSONIA, DANBURY, DERBY, NORWALK; TOWNS OF STRATFORD, BERLIN, MIDDLEBURY, PROSPECT, | Adv. Pro. No. 19-_____ (KG) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

SEYMOUR, WOLCOTT, BETHLEHEM, NEW MILFORD, ROXBURY, COVENTRY; CITY OF NEW BRITAIN; TOWN OF WALLINGFORD; CITY OF MIDDLETOWN; TOWN OF WETHERSFIELD; LA SALLE COUNTY; CITY OF MANDERVILLE; CITY OF WORCESTER; CITY OF BOSTON, BOSTON PUBLIC HEALTH COMMISSION, BOSTON HOUSING AUTHORITY; TOWN OF WAKEFIELD; CITY OF FRAMINGHAM; CITY OF SALEM; CITY OF HAVERHILL; CITY OF GLOUCESTER; TOWN OF LYNNFIELD; TOWN OF CANTON; CITY OF SPRINGFIELD; CITY OF CHICOPEE; TOWN OF NATICK; TOWN OF WELLFLEET; CITY OF BALTIMORE; ANNE ARUNDEL COUNTY; CITY OF STERLING HEIGHTS; CHARTER TOWNSHIP OF HARRISON; CITY OF WARREN; COUNTY OF BURLINGTON; CLARK COUNTY; CITY OF RENO; COUNTY OF NASSAU; SUFFOLK COUNTY; CITY OF YONKERS; BOARD OF COUNTY COMMISSIONERS OF CLEVELAND COUNTY; COUNTY OF NORTHUMBERLAND; COUNTY OF ANDERSON; COUNTY OF BAMBERG; COUNTY OF BARNWELL; COUNTY OF COLLETON; COUNTY OF CHEROKEE; COUNTY OF OCONEE; COUNTY OF LEXINGTON; COUNTY OF ALLENDALE; COUNTY OF HAMPTON; COUNTY OF JASPER; COUNTY OF KERSHAW; FAIRFIELD COUNTY; GREENWOOD COUNTY; COUNTY OF LAURENS; COUNTY OF UNION; COUNTY OF YORK; COUNTY OF GREENVILLE; COUNTY OF DORCHESTER; COUNTY OF PICKENS; COUNTY OF SPARTANBURG; COUNTY OF ORANGEBURG; COUNTY OF LEE; COUNTY OF CHESTERFIELD; COUNTY OF BEAUFORT; COUNTY OF WILLIAMSBURG; COUNTY OF EDGEFIELD; COUNTY OF MCCORMICK; COUNTY OF SUMTER; COUNTY OF FLORENCE; COUNTY OF AIKEN; DILLON COUNTY; LANCASTER COUNTY; COUNTY OF MARION; COUNTY OF CALHOUN; COUNTY OF HORRY; ABBEVILLE COUNTY; COUNTY OF SALUDA; COUNTY OF CLARENDON; SHELBY

COUNTY; COUNTY OF BEXAR; COUNTY OF BURLESON; COUNTY OF CAMERON; COUNTY OF EL PASO; COUNTY OF HARRISON; COUNTY OF HIDALGO; COUNTY OF KERR;  COUNTY OF LIBERTY; SAN PATRICIO COUNTY; COUNTY OF WALLER; MAVERICK COUNTY; COUNTY OF DUVAL; ROCKWALL COUNTY; ELLIS COUNTY; WEBER COUNTY; UINTAH COUNTY, DUCHESNE COUNTY, DAGGETT COUNTY AND TRI-COUNTY HEALTH DEPARTMENT; WASATCH COUNTY; COUNTY OF SUMMIT; TOOELE COUNTY; CACHE COUNTY AND RICH COUNTY; WASHINGTON COUNTY, KANE COUNTY, BEAVER COUNTY AND GARFIELD COUNTY; THE COUNTY BOARD OF ARLINGTON COUNTY; CITY OF PORTSMOUTH; CITY OF RICHMOND; THE COUNTY COMMISSION OF MASON COUNTY; ROANE COUNTY COMMISSION; CITY OF RIVERTON; COUNTY OF ALAMEDA; CITY OF WESTMINSTER; CITY OF IRVINE; CITY OF COSTA MESA; CITY OF FULLERTON; CITY OF SAN CLEMENTE; COUNTY OF KERN; CITY OF EL MONTE; TOWN OF ENFIELD; CITY OF NORWICH; CITY OF POCATELLO; TOWN OF RANDOLPH; CITY OF CAMBRIDGE; CITY OF ANNAPOLIS; CITY OF ROCHESTER; BELKNAP COUNTY; CITY OF BELMONT; CHESHIRE COUNTY; GRAFTON COUNTY; ROCKINGHAM COUNTY; STRAFFORD COUNTY; SULLIVAN COUNTY; CITY OF CLAREMONT; BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LINCOLN; COUNTY OF CURRY; JOHNSON COUNTY; COUNTY OF WALKER; DINWIDDIE COUNTY; NORTHUMBERLAND COUNTY; CITY OF CHESAPEAKE; ACCOMACK COUNTY; FRANKLIN COUNTY; CITY OF SALEM; CITY OF BRISTOL; ROANOKE COUNTY; CITY OF LEXINGTON; ROCKBRIDGE COUNTY; HALIFAX COUNTY; FAUQUIER COUNTY; ALLEGHANY COUNTY; FAIRFAX COUNTY BOARD OF SUPERVISORS; LOUISA COUNTY; MADISON COUNTY; FLOYD COUNTY; CITY OF

3

| |
|---|
| COVINGTON; CITY OF ROANOKE;  ; BOARD OF SUPERVISORS OF PRINCE WILLIAM COUNTY; COUNTY OF SUMMIT, SUMMIT COUNTY COMBINED GENERAL HEALTH DISTRICT, CITY OF AKRON, CITY OF BARBERTON, VILLAGE OF BOSTON HEIGHTS, BOSTON TOWNSHIP, VILLAGE OF CLINTON, COPLEY TOWNSHIP, COVENTRY TOWNSHIP, CITY OF CUYAHOGA FALLS, CITY OF FAIRLAWN, CITY OF GREEN, VILLAGE OF LAKEMORE, VILLAGE OF MOGADORE, CITY OF MONROE FALLS, CITY OF NORTON, VILLAGE OF PENINSULA, VILLAGE OF RICHFIELD, VILLAGE OF SILVER LAKE, SPRINGFIELD TOWNSHIP, CITY OF STOW, CITY OF TALLMADGE, VALLEY FIRE DISTRICT; COUNTY OF CUYAHOGA; CITY OF CLEVELAND; CABELL COUNTY |
| **Government Defendants.** |

## COMPLAINT FOR INJUNCTIVE RELIEF

Insys Therapeutics, Inc. ("**Insys**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**") and plaintiffs in the above-captioned adversary proceeding, allege for their Complaint ("**Complaint**"), upon knowledge of their own acts and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.  This is an adversary proceeding brought pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure and Sections 105 and 362 of Title 11 of the United States Code (the "**Bankruptcy Code**") to preliminarily and permanently enjoin: (i) eleven[2] actions filed

---

[2] There are ten pending actions brought by States Attorneys General, and, in Minnesota, a second action brought as an administrative proceeding by the Minnesota Board of Pharmacy.

by States Attorneys General, or other state governmental units charged with public health and safety enforcement ("**State AG Actions**"), against certain of the Debtors; (ii) four active lawsuits filed by numerous counties, cities, towns and municipalities against certain of the Debtors that are pending in the multidistrict litigation, *In re National Prescription Opiate Litigation*, Case No. 1:17-md-02804 (MDL No. 2804), U.S. District Court for the Northern District of Ohio ("**MDL**"); and (iii) 152 other lawsuits also filed by numerous counties, cities, towns, and other municipalities that have not been consolidated into the MDL and that are pending in various jurisdictions around the country ("**Local Government Actions**" and together with the State AG Actions, "**Government Actions,**").[3] Although these actions primarily seek monetary relief, the Debtors anticipate that the defendants may argue that all such actions are within the so-called "police powers exception" to the automatic stay.[4] *See* 11 U.S.C. § 362(a)(1). The Debtors do not, through this adversary proceeding, seek a stay of any pending actions against them that are not currently active, including the over 750 cases in the MDL that have already been stayed by the MDL court. Through a Motion to Establish Estimation Procedures, filed concurrently herewith, the Debtors seek to include pending litigation claims against the Debtors in an efficient process that would enable the Debtors (and their creditors) to fix aggregate amounts of particular categories of claims on an expedited basis.

2.   The Debtors seek both preliminary and permanent injunctive relief with respect to the continued prosecution of the Government Actions by the plaintiffs in those actions

---

[3] A list of the Government Actions to be stayed is attached as **Appendix A** hereto.

[4] For purposes of this Complaint, the Debtors do not concede that the Government Actions fall within section 362(b)(4)'s exception to the automatic stay, but do anticipate that some or all of the plaintiffs in the Government Actions will argue the exception applies.

("**Government Plaintiffs**")[5] to avoid definite and irreparable harm to the Debtors' estates should the actions be allowed to continue.

3. Upon filing for bankruptcy, the Debtors owe a duty to all their constituents to protect and preserve the estates' assets. The Debtors' primary objective in these Chapter 11 Cases is to maximize the value of the estates and facilitate an equitable and efficient distribution of proceeds to all stakeholders. To advance those objectives, the Debtors seek a reprieve from costly, protracted litigation. In addition, contemporaneous with this filing, the Debtors are moving for the establishment of estimation procedures that will include certain material categories of unliquidated litigation claims against the Debtors, of which there are approximately 1,000, including the Government Actions, personal injury actions, and actions by insurance companies, among others. The purpose of the proposed estimation proceeding is to provide an orderly and efficient mechanism for addressing the large universe of pending litigation and to ensure a fair and proportionate recovery for all claimants.

4. Meanwhile, absent injunctive relief, the Debtors would be burdened with having to actively defend the Government Actions in multiple venues, thereby depleting the estates' value and the assets available for distribution to creditors. Due to the significant costs of defending the Government Actions, including attorneys' fees and costs related to discovery, trial preparation and trial, the Debtors' limited resources will inevitably erode if the actions continue. Allowing the Government Actions to proceed would directly damage all creditors, including the Government Plaintiffs themselves.

5. Absent injunctive relief, the Debtors' restructuring efforts will also be hampered by the necessity for management to participate in the defense of the Government Actions. The

---

[5] The Government Plaintiffs are the Defendants in this adversary proceeding.

6

Debtors' leadership would be forced to prepare for and attend hearings and trials, assist in preparing discovery responses, devote time preparing for and participating in depositions, and help analyze and develop the Debtors' legal defenses. This would distract the Debtors' employees from, among other things, maximizing the value of the Debtors' estates by negotiating and executing agreements for the sale of assets during this critical stage.

6. The Debtors are not requesting injunctive relief as a means of escaping liability. Nor would an injunction prejudice the Government Plaintiffs. The Government Plaintiffs seek primarily to recover money damages and are entitled to only a ratable share of the assets available to unsecured creditors regardless of whether their claims are litigated or estimated.

## JURISDICTION AND VENUE

7. This adversary proceeding arises in and relates to Debtors-Plaintiffs' cases pending before this Court under chapter 11 of the Bankruptcy Code.

8. The Court has jurisdiction to consider this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

9. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 7008–1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**THE PARTIES**

11. The Debtors (*i.e.*, the Plaintiffs in this adversary proceeding) are a specialty pharmaceutical company that develops and markets drugs and novel drug delivery systems for targeted therapies that improve patients' quality of life by addressing unmet patient needs. Insys, which sits atop the Debtors' organizational structure, was incorporated in Delaware in June 1990 and maintains its headquarters in Chandler, Arizona.

12. The Defendants in this adversary proceeding are the plaintiffs which have commenced the Government Actions against the Debtors, including: (i) the Offices of the Attorneys General in Arizona, Florida, Kentucky, Maryland, Minnesota, New Jersey, New Mexico, New York, North Carolina, and Rhode Island, and the Minnesota Board of Pharmacy ("**States**"); and (ii) the various cities, towns, counties, and other municipalities ("**Local Governments**") who, together, have filed the Local Government Actions. *See* Appendix A for a complete listing of Defendants in this adversary proceeding.

**STATEMENT OF FACTS**

**I.    THE EVENTS PRECEDING THE BANKRUPTCY PETITION**

13. Insys occupies a niche sector of the pharmaceutical industry as it commercializes just two products: SUBSYS® ("**Subsys**") and SYNDROS®. Subsys is an opioid pain medication indicated for the management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and who are tolerant to around-the-clock opioid therapy for their underlying persistent cancer pain. Subsys is the first and only medication approved by the U.S. Food and Drug Administration ("**FDA**") for patients with breakthrough cancer pain that is offered as a sublingual spray that delivers fentanyl, an opioid agonist for absorption underneath the tongue, which may provide pain relief in as little as five minutes. Subsys was launched as a commercial product in March 2012.

14. Insys is a relatively small player in the prescription-opioids market. Based on data available to Debtors through the Symphony Health Pharmaceutical Audit Suite (PHAST™), Subsys' percentage of total nationwide number of prescriptions for opioid products was 0.0021% in 2012, 0.0112% in 2013, 0.0213% in 2014, 0.0283% in 2015, 0.0194% in 2016 and 0.0098% in 2017. In 2015, when Subsys' percentage was its largest, it was prescribed only approximately 53,000 times, as compared with 187,000,000 opioid prescriptions nationwide.

15. In recent years, Insys, along with numerous other opioid manufacturers, distributors, retailers and prescribers, has faced an onslaught of litigation in courts around the country (the "**Opioid Litigation**"). These lawsuits generally involve numerous allegations of illegal and deceptive sales and marketing practices related to opioids.

16. Many of the allegations specific to Insys focus on the "Insys Speaker Program" and an internal "reimbursement center," both of which were used, in part, to unlawfully encourage the prescription of, and payment for, Subsys. Through its speaker program, Insys paid healthcare professionals to make presentations to doctors regarding Subsys, including uses and dosage levels, and to otherwise promote the product. In some circumstances, there were no appropriate attendees and/or no presentation was actually given. Insys terminated the speaker program for Subsys in early 2018 and has no plan to reinstate any program that involves compensating outside "speakers" in relation to Subsys.

17. Plaintiffs in the Opioid Litigation allege that Insys also created a "prior authorization unit" called the Insys Reimbursement Center (and later called the Patient Services Center or Patient Services Hub) through which, under the direction of former employees, it allegedly employed a number of misleading tactics to secure authorization from insurers for certain Subsys prescriptions. Insys ceased performing prior authorizations in-house by the beginning of

2017. Insys does not currently have, and has no plan to reinstate, any program that involves its personnel making direct contact with insurance companies for the purpose of securing prior authorizations for Subsys prescriptions.

18. In light of these long-terminated practices, the recent criminal convictions of a number of former officers and employees of Insys, Insys has changed its management and the vast majority of its employees, to reset Insys on an entirely lawful approach to the marketing of its products. The CEO, General Counsel, and the heads of Commercial, Human Resources, and Clinical Development are all new to the company since July 2017, along with nearly all of the independent directors on the Board. In addition, most of the management team and the commercial organization, which includes Insys's sales force, is new to the company since 2015.

19. Insys is fully committed to ensuring that its promotion of Subsys does not include any claim that is false, misleading, or deceptive or that violates federal or state laws. Insys trains all sales representatives to promote Subsys consistent with its FDA-approved label, including with respect to titration and detailing on side effects for each patient, and not to promote Subsys for any off-label use.

20. Insys's sales force is prohibited from promoting Subsys to a prescriber unless that prescriber (a) has all state and federal licenses required to prescribe Subsys, and (b) is enrolled in the TIRF REMS[6] program or is an oncologist. Before promoting Subsys to any non-oncologist members of the TIRF REMS program, the sales representative must inquire whether the prescriber treats or forms a reasonable belief that the prescriber is likely to treat patients for cancer pain. If the prescriber does not treat patients for cancer pain or the sales representative does not have a

---

[6] The Transmucosal Immediate Release Fentanyl (TIRF) Risk Evaluation and Mitigation Strategy (REMS) program is an FDA-required program designed to ensure informed risk-benefit decisions before initiating treatment, and while patients are being treated, to ensure appropriate use of TIRF medications.

reasonable belief that the prescriber is likely to treat patients for cancer pain, the sales representative is prohibited from promoting Subsys to that prescriber.

21.     On June 5, 2019, Insys entered into a Corporate Integrity Agreement and Conditional Exclusion Release ("**CIA**") with the Office of Inspector General of the United States Department of Health and Human Services under which Insys has agreed to establish and maintain, for a period of five years, an extensive program intended to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs and with the statutes, regulations, and written directives of the FDA.  For example, the compliance program mandated under the CIA includes the appointment of a compliance officer and compliance committee, board compliance obligations, the establishment of written standards, and training and education requirements, among other elements.  Among other conduct, Insys has agreed under the CIA to cease all payments to prescribers and non-Insys employee physicians for participating in any speaker programs and related activities in connection with any Insys product.

22.     Additionally, under the CIA, Insys has agreed to stop all marketing and promotion of Subsys upon the earlier of a sale or 90 days from the effective date of the CIA.  Therefore, the Debtors expect that all activity related to the sale and marketing of Subsys will necessarily cease by mid-September, 2019.

**II.     THE RELEVANT ACTIONS**

**A.     The State AG Actions**

23.     Insys is a defendant or respondent in actions brought by the Offices of the Attorney General, or other state governmental units charged with public health and safety enforcement, in the following states ("**States**"): Arizona, Florida, Kentucky, Maryland, Minnesota, New Jersey, New Mexico, New York, North Carolina, and Rhode Island.  All of the States allege, in essence,

that Insys employed fraudulent, illegal, and misleading marketing schemes to promote Subsys in the applicable state. The States generally assert causes of action related to deceptive acts and practices, including for violations of various consumer protection laws, fraud, negligent misrepresentation, commercial bribery, unjust enrichment, and, in some instances, public nuisance, and seek relief in the form of restitution, disgorgement, treble damages, civil penalties and investigative and other costs. Some of these States also seek injunctive relief. However, as discussed above, Insys has already ceased the conduct at the core of the allegations specific to Insys, removed management and employees affiliated with said conduct, and is committed to lawfully marketing and promoting its products, including through the establishment of an extensive compliance program as set forth in the CIA. In addition, Insys expects to stop all marketing and promotion of Subsys by mid-September, 2019, thereby rendering the claims for injunctive relief effectively, if not literally, moot.

**B.    Local Government Actions**

24.    Insys, along with numerous other opioid manufacturers, distributors, retailers and prescribers, has been named in approximately 1,000 complaints brought by various cities, counties, states, third-party payers and Native American tribes in state and federal courts throughout the country. The Local Governments principally allege that Insys, along with the other vastly larger manufacturers and distributors of prescription opioids, grossly misrepresented the risks of long-term use of their drugs, thereby causing or contributing to a widespread opioid crisis and resulting public nuisance.

25.    The majority of Local Government Actions have been consolidated into the MDL and are currently stayed; however, five of the MDL cases are scheduled to proceed. Two such

cases brought by plaintiff municipalities located in the Northern District of Ohio, are scheduled for trial beginning on October 21, 2019.

26. Approximately 260 other Local Government Actions against Insys have not been transferred to the MDL[7] and are pending in state courts throughout the country, largely concentrated in state courts in Arizona, Connecticut, Massachusetts, New York, Oklahoma, Pennsylvania, South Carolina, and Texas, of which some 152 are currently active.

### IMPACT OF ACTIVE LITIGATION ON DEBTORS' FINANCIAL RESOURCES

27. The cost of litigating the Government Actions has significantly taxed the Debtors' limited financial resources, and, absent injunctive relief, will continue to do so. Those estimated costs are, in part, due to significant activity scheduled to occur in the near term in certain of the pending actions.

28. The first trial in the MDL, of the Track One bellwether cases brought by Summit County and Cuyahoga County, Ohio, is scheduled to begin on October 21, 2019 and is expected to last seven weeks. Additionally, the deadline for filing dispositive and *Daubert* motions is June 28, 2019, the deadline to exchange witness lists and proposed trial exhibits is September 11, 2019, and the deadline for filing motions *in limine* and trial briefs is September 25, 2019.

29. In the action brought against Insys by the Consumer Protection Division of the Office of the Attorney General of Maryland, a hearing before an administrative law judge is scheduled to take place over approximately 35 days spread across August, 2019 – January, 2020, with closing arguments and post-hearing briefs in February and March, 2020. Moreover, there are a number of impending pre-hearing deadlines, including filing expert disclosures and pre-trial motions by July 15, 2019.

---

[7] Including approximately 50 cases for which an application has been made to transfer the action to the MDL.

30. In the proceeding brought against Insys by the Minnesota Board of Pharmacy Committee on Professional Standards, a hearing is scheduled to take place before an administrative law judge from September 2–13, 2019. Meanwhile, discovery is set to close on July 8, 2019; expert witness statements must be served by July 17; dispositive motions must be filed by July 26; a prehearing conference is set for August 9; and motions *in limine* must be filed by August 26; and trial briefs and Proposed Findings of Fact and Conclusions of Law must be submitted prior to the hearing.

31. The Debtors anticipate that, absent a stay, they would spend approximately $8,500,000 to $9,000,000 in defending these and other government actions from June through December, 2019. With the stay, the Debtors anticipate a significant savings of $1,000,000 to $1,500,000 per month. As of the Petition Date, the Debtors have under $40,000,000 in cash on hand.

**CLAIM FOR RELIEF**
**(PRELIMINARY AND PERMANENT INJUNCTION STAYING THE GOVERNMENT ACTIONS AGAINST THE DEBTORS)**

32. The Debtors repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

33. The Debtors seek preliminary and permanent injunctions to stay the continued prosecution of the Government Actions against the Debtors under section 105(a) of the Bankruptcy Code.

34. Section 105(a) authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Injunctive relief under section 105 is available to stay even such actions as are exempt from the automatic stay in a chapter 11 case where necessary to preserve the property of the Debtors' estate and to protect the Debtors' ability to confirm a plan of reorganization.

35. There is a substantial likelihood that these Chapter 11 Cases will succeed if the Debtors are granted a reprieve from active litigation that permits them to maximize the estate's value through an asset sale process and claims estimation proceeding. Without injunctive relief, the assets available for distribution thereafter would be irretrievably dissipated.

36. The balance of harms weighs decidedly in favor of enjoining the Government Actions against the Debtors. The relief requested will neither injure nor prejudice the Government Plaintiffs, which are entitled to only a ratable share of the assets available to unsecured creditors in the Chapter 11 Cases. To the extent the Government Plaintiffs are seeking injunctive relief in their lawsuits, such relief is of exceedingly limited, if any, utility, given that the criticized core conduct has already ceased, the Debtors' management has entirely turned over since the days of that conduct, new management has committed the Debtors to engaging only in marketing practices that strictly comply with federal and state laws and regulations, and the Debtors are likely to sell all of their assets during the Chapter 11 Cases.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray the Court to enter an order:

A. Preliminarily and permanently enjoining the Government Actions during the pendency of the Chapter 11 Cases; and

B. Granting such other and further relief and the Court may deem just and proper.

Dated: June 10, 2019
      Wilmington, Delaware

      */s/ Paul N. Heath*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (*pro hac vice* pending)
Ronit J. Berkovich (*pro hac vice* pending)
Peter D. Isakoff (*pro hac vice* pending)
Brenda L. Funk (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*